**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CAUSE NO.: 1:14-CR-14-5-TLS-SLC |
| RICHARD A. COUNCIL | |

**OPINION AND ORDER**

This matter is before the Court on a Petition Seeking Expedited Relief Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [ECF No. 556], filed by Defendant Richard A. Council on May 6, 2020. Defendant Council seeks compassionate release due to the COVID-19 pandemic and his personal risk factors. For the reasons set forth below, Defendant's motion is DENIED.

**BACKGROUND**

On February 14, 2014, a Complaint [ECF No. 1] was filed charging Defendant and others with conspiracy to possess with intent to distribute controlled substances, including 5 kilograms or more of a mixture containing a detectable amount of cocaine, in violation of 21 U.S.C. § 846 and knowingly possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Defendant was arrested on February 12, 2014, pursuant to an arrest warrant [ECF No. 4, 41]. An Indictment [ECF No. 57] was returned against Defendant and his co-defendants on February 26, 2014, charging Defendant in Count I with conspiracy to possess with intent to distribute controlled substances, including 5 kilograms or more of a mixture containing a detectable amount of cocaine, in violation of 21 U.S.C. § 846, and in Count II with knowingly possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). On May 4, 2017, Defendant pleaded guilty [ECF No. 228] to Counts I and II of the

Indictment pursuant to a Plea Agreement [ECF No. 220]. In a May 23, 2017 Order [ECF No. 233], the Court adjudged Defendant guilty of Counts I and II of the Indictment.

On March 26, 2018, the Court sentenced Defendant to 135 months imprisonment on Count I and 60 months imprisonment on Count II, to be served consecutively, followed by five years of supervised release. Defendant has been in custody since his arrest on February 12, 2014. Final PSR 1, ECF No. 260. Defendant is currently confined at Federal Correctional Institution Elkton (FCI-Elkton) in Ohio. Def.'s Mot. 2, ECF No. 556; Gov't Resp. 7, ECF No. 564.

On May 6, 2020, Defendant file the instant Petition Seeking Expedited Relief Pursuant to 18 USC § 3582(c)(1)(A)(i) under Life-Threatening Prison Practices [ECF No. 556] asking to be released from prison in light of the COVID-19 pandemic. The Court then issued that same date an Order [ECF No. 557] referring this matter to the Federal Community Defender to consider filing a supplemental brief in support of Defendant's request. On May 7, 2020, counsel entered an appearance [ECF No. 558] on behalf of Defendant. On May 18, 2020, counsel filed a motion to withdraw her appearance [ECF No. 561] after giving notice to Defendant, and the Court granted the motion [ECF No. 562] on May 20, 2020. On June 3, 2020, the Government filed a response [ECF No. 564], opposing Defendant's motion for compassionate release.

## ANALYSIS

Defendant asks the Court to modify his sentence pursuant to the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i) based on the threats posed by the COVID-19 pandemic and his personal health concerns of sleep apnea, asthma, hypothyroidism, and obesity. Def.'s Mot. 5–6, ECF No. 556. Defendant asks the Court for compassionate release or release on home confinement. For the reasons set forth below, the Court denies the motion.

Following the imposition of sentence, a court may not modify the term of imprisonment absent specific circumstances enumerated in 18 U.S.C. § 3582(c). Once such circumstance

2

allows a court to grant a defendant compassionate release if certain requirements are met. *Id.*
§ 3582(c)(1)(A). The statute provides that

> the court, upon motion of the Director of the Bureau of Prisons, or *upon motion of the defendant* after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction . . .
> >
> > > and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission . . . .

*Id.* (emphasis added). Thus, the statute sets out four requirements: exhaustion of administrative remedies, consideration of whether "extraordinary and compelling reasons" warrant a reduction in the term of imprisonment, consideration of the § 3553(a) factors, and consistency with the applicable Sentencing Commission policy statements.

While the statute does not define "extraordinary and compelling reasons," Congress provided:

> The [Sentencing] Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(t).

Pursuant to that authority, the Sentencing Commission Policy Statement on § 3582(c)(1)(A) provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the

unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1) (A) extraordinary and compelling reasons warrant the reduction . . .

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

U.S. Sentencing Guidelines Manual § 1B1.13. The commentary to the Policy Statement then provides that extraordinary and compelling reasons exist under any of these circumstances:

(A) <u>Medical Condition of the Defendant</u>.—

(i) The defendant is suffering from a terminal illness (<u>i.e.</u>, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (<u>i.e.</u>, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) <u>Age of the Defendant</u>.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) <u>Family Circumstances</u>.

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

 (D) <u>Other Reasons</u>.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S. Sentencing Guidelines Manual § 1B1.13 cmt. 1.

 Policy Statement § 1B1.13 was effective November 1, 2018, but has not been updated to reflect that the First Step Act amended § 3582(c)(1)(A) in December 2018 to allow a motion to be brought by a defendant and not only by the Bureau of Prisons. *See* U.S. Sentencing Guidelines Manual § 1B1.13 cmt. 4 ("A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A)."). Nevertheless, § 1B1.13 provides guidance on the "extraordinary and compelling reasons" that may warrant a reduction in a term of imprisonment on a motion brought by a defendant. *See United States v. Scott*, No. 17-CR-156, 2020 WL 2508894, at *7–8, — F. Supp. 3d —, — (E.D. Wis. May 15, 2020) (agreeing with the majority of courts that a "court in deciding a compassionate release motion is no longer confined to the specific examples enumerated in U.S.S.G. § 1B1.13"); *United States v. McGraw*, No. 2:02-cr-18, 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019) ("While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." (citing cases)).

 The Court must first consider whether Defendant has exhausted his administrative remedies. Section 3582(c)(1)(A) provides that a defendant may bring a motion for compassionate release only after either (1) exhausting administrative review of the Bureau of

Prisons' denial of a request or (2) thirty days have "lapsed" since the defendant made the request to the warden, whichever is earlier. *See* 18 U.S.C. § 3582(c)(1)(A). In his motion, signed on May 4, 2020, and filed with the Court on May 6, 2020, Defendant does not make a specific showing regarding exhaustion. Rather, he states generally that "[c]ase managers are deliberately ignoring inmate needs and questions regarding . . . compassionate release." Def.'s Mot. ¶ 17. Nevertheless, in its response brief filed on June 3, 2020, the Government represents that, according to BOP personnel, Defendant filed a Reduction in Sentence (RIS) request with the warden at FCI-Elkton, and the request was denied on April 29, 2020. Gov't Resp. 13, 14, ECF No. 564. The Government further represents that, according to Bureau of Prisons personnel, as of June 3, 2020, Defendant has not filed an administrative remedy on the denial of his RIS request. *Id.* Thus, the Government argues that Defendant has failed to exhaust his administrative remedies and represents that it does not waive the exhaustion requirement of the statute. Gov't Resp. 14–15, ECF No. 564.

In this case, the Court does not know the date of Defendant's RIS request or how long it took the warden to respond to the request. However, the warden denied the request on April 29, 2020, and, as of June 3, 2020, Defendant has not sought any administrative remedies in relation to that denial. Courts are divided on the issue of whether a district court has the authority to excuse compliance with the statutory exhaustion requirement of § 3582(c)(1)(A) given the serious risks associated with COVID-19. *See United States v. Smith*, Case No. 15-cr-3039, 2020 WL 3027197, at *3 (C.D. Ill. June 5, 2020) (collecting cases). Two questions are presented by this issue, namely whether the exhaustion requirement is jurisdictional and whether, if not jurisdictional, the exhaustion requirement is waivable over the government's objection.

The district courts of the United States are "courts of limited jurisdiction." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Thus, there is an important distinction

6

between a rule that is a jurisdictional requirement and a claim-processing rule. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434–35 (2011). In *Arbaugh v. Y&H Corp.*, the United States Supreme Court adopted a "bright line" test for classifying a statutory rule as jurisdictional. 546 U.S. 500, 515–16 (2006). A rule qualifies as jurisdictional only if "Congress has 'clearly stated' that the rule is jurisdictional." *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) (quoting *Arbaugh*, 546 U.S. at 515–16). The Supreme Court cautioned that, "absent such a clear statement, . . . 'courts should treat the restriction as nonjurisdictional in character.'" *Id.* (quoting *Arbaugh*, 546 U.S. at 515–16).

Although the Seventh Circuit Court of Appeals has not addressed whether the exhaustion requirement of § 3585(c)(1)(A) is jurisdictional, in *United States v. Taylor*, the Seventh Circuit held that 18 U.S.C. § 3582(c)(2) sets forth a nonjurisdictional rule. 778 F.3d 667, 671–72 (7th Cir. 2015) (noting, in part, that § 3582 is "not part of a jurisdictional portion of the criminal code but part of the chapter dealing generally with sentences of imprisonment").[1] Following the reasoning in *Taylor*, the Court finds that Congress did not "clearly state" that the exhaustion requirement is jurisdictional in § 3582(c)(1)(A). *See United States v. Cox*, 4:18-cr-17, 2020 WL 1923220, at *2–3 — F. Supp. 3d —, — (S.D. Ind. Apr. 21, 2020) (concluding that the exhaustion requirements of § 3582(c)(1)(A) are not jurisdictional) (citing *Taylor*, 778 F.3d at 668, 669–71). Thus, the exhaustion requirement of § 3582(c)(1)(A) is a claim-processing rule and not a jurisdictional rule that would deprive the court of jurisdiction if not met.

As to whether exhaustion under § 3582(c)(1)(A) is waivable as a claim-processing rule, courts have taken different approaches, from finding that exhaustion is prudential and can be

---

[1] The Court recognizes that the Government is aware of and disagrees with the holding of *United States v. Taylor*, 778 F.3d 667 (7th Cir. 2015), and preserves its objection that exhaustion is jurisdictional. *See* Gov't Resp. 15 n.4, ECF No. 564.

excused by the court to strictly enforcing the exhaustion requirements. *See, e.g.*, *United States v. Alam*, No. 20-1298, 2020 WL 2845694, at *2–4 (6th Cir. June 2, 2020) (holding that exhaustion of administrative remedies under § 3582(c)(1)(A) is mandatory and declining to make an equitable exception to the statutory requirement); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (finding that the defendant had failed to comply with § 3582(c)(1)(A)'s exhaustion requirement because the Bureau of Prisons had not had thirty days to consider the defendant's request for compassionate release and there had been no adverse decision for the defendant to administratively exhaust); *Cox*, 2020 WL 1923220, at *8, — F. Supp. 3d at — (finding that a court cannot waive the statutory exhaustion requirement over the government's objection because Congress did not intend to allow for court-created exceptions even under the exigent circumstances created by the COVID-19 pandemic); *United States v. Haney*, 19-cr-541, 2020 WL 1821988, at *3, — F. Supp. 3d —, — (S.D.N.Y Apr. 13, 2020) (finding that "Congress cannot have intended the 30-day waiting period of § 3582(c)(1)(A) to rigidly apply in the highly unusual situation in which the nation finds itself today" and permitting the defendant to seek relief before the thirty-day period had elapsed).

In this case, the Court need not resolve the issue because Defendant has not shown extraordinary and compelling reasons for a reduction in his term of imprisonment. *See, e.g.*, *United States v. Wolfe*, 1:15-cr-169, 2020 WL 2615010, at *2 (S.D. Ind. May 22, 2020) (putting "to the side the thorny issue of exhaustion to tackle the easier issue" of whether the defendant has presented extraordinary and compelling reasons to warrant a sentence reduction).[2]

---

[2] The Court also notes, as discussed more below, that Defendant requested and was denied release on home detention under the CARES Act separately from his RIS request but that the two requests are separate procedures. *See United States v. Gregory*, No. 11 CR 745, 2020 WL 3036001, at *1 (N.D. Ill. June 5, 2020) (explaining the difference between request for home confinement, which alters the location of confinement, and compassionate release, which reduces a sentence, and finding that a request to the warden for home detention does not satisfy the statutory-exhaustion requirements for a sentence reduction).

Defendant's motion argues that he is at risk of death as an inmate due to the COVID-19 pandemic, noting generally the conditions of prison overcrowding as well as the specific conditions at FCI-Elkton. Although the Court recognizes that COVID-19 poses a general threat to every non-immune person in the country, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597; *see also* Federal Bureau of Prisons, COVID-19 Action Plan: Phase Seven (posted on May 20, 2020), https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp (last visited June 11, 2020); Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/index.jsp (last visited June 11, 2020).

Rather, § 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and his personal health conditions. *See United States v. Downing*, No. 18-cr-40037, 2020 WL 2789790, at *2 (C.D. Ill. May 29, 2020) ("[A] prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." (quoting *United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020))). Defendant is housed at FCI-Elkton. In his motion, Defendant represents that eight inmates at FCI-Elkton have died from COVID-19, that dozens of inmates and staff have tested positive, and that approximately 100 inmates and staff are in quarantine. Def.'s Mot. 3–4, ECF No. 556. In its response brief, the Government represents that, as of May 28, 2020, the inmate population at FCI-Elkton is 1,905. Gov't Resp. 21, ECF No. 564. As of June 3, 2020, FCI-Elkton reported that

461 inmates have tested positive with COVID-19 and there have been nine inmate deaths related to COVID-19. *Id.* The Government represents that, on May 21, 2020, Defendant had a COVID-19 screening and tested negative for COVID-19 on May 22, 2020. *Id.* 14. As noted above, the Bureau of Prisons has taken significant and serious steps to reduce the spread of COVID-19 in its facilities.

Turning to Defendant's personal health conditions of sleep apnea, asthma, hypothyroidism, and obesity, the Court finds that, even in the context of the COVID-19 pandemic, these conditions do not constitute an extraordinary and compelling reason to justify a sentence reduction. Moderate to severe asthma and severe obesity can increase the risk for severe illness from COVID-19. *See* "People who are at high risk for severe illness," Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited June 11, 2020). However, Defendant has not offered evidence that he suffers from these conditions to a degree that would be considered extraordinary or compelling.

At the time his presentence report was prepared in 2017, Defendant reported that his asthma, sleep apnea, and high blood pressure were under control with medication. Revised Final PSR ¶ 124, ECF No. 329. The Government represents that the Bureau of Prison records show that Defendant has asthma, hypothyroidism, and is obese. Gov't Resp. 15, ECF No. 564. However, a sleep study ordered in 2020 has not yet been completed and no sleep apnea diagnosis has been made. *Id.* 16. The Government represents that the diagnosis of asthma appears in Defendant's Bureau of Prisons medical records in 2018 but that Defendant's records at that time and since that time reflect that his asthma is under control and that he uses an albuterol inhaler. *Id.* The Government represents that there is no mention in Defendant's medical records of any serious asthma attacks, any lingering pulmonary effects from asthma, or of any other impairment

10

attributable to asthma. *Id.* There is no report in his medical records of any severe illness or consequence as a result of his obesity. *Id.*

Defendant is 49 years old and, thus, is not of advanced age. *See* Revised Final PSR 2, ECF No. 329. As noted above, Defendant tested negative for COVID-19 on May 22, 2020, notwithstanding the number of confirmed cases within FCI-Elkton. The Government also represents that, in May 2020, Defendant was screened by Bureau of Prison staff for release to home confinement, and Defendant was denied placement in home confinement by the Bureau of Prisons. Gov't Resp. 17, ECF No. 564. Having considered the location of Defendant's confinement and the nature of his health concerns, the Court finds that Defendant has not shown extraordinary and compelling reasons that would make him eligible for a reduction in his term of imprisonment.

Moreover, if the Court were to move on in the analysis and consider the § 3553(a) factors and whether Defendant is a danger to the safety of any other person or the community, the Court would find that the factors do not warrant a reduction in his sentence. Defendant was part of a conspiracy, the aim of which was to rob a drug house. Defendant admitted that he brought a gun with him on the night of the planned robbery and that he and others were going to zip tie all occupants of the drug house. The Government represents that Defendant has had some disciplinary issues while incarcerated at FCI-Elkton. Gov't Resp. 21, ECF No. 564. On November 3, 2019, Defendant was sanctioned after admitting to running from facility staff and disposing of an item in the toilet. *Id.* On January 10, 2020, Defendant was sanctioned after he admitted to smoking marijuana. *Id.* In addition, Defendant has not yet served half of his sentence of 195 months. With good time credit, Defendant's projected release date is February 11, 2028, with a full-term release date of May 14, 2030. *Id.* 22. He has served less than 40% of his full-term sentence and 45% of his good time credit sentence. *Id.* Defendant has presented no

11

compelling argument to change the Court's finding that the original sentence of 195 months imprisonment was sufficient, but not greater than necessary, to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a).

Therefore, based on Defendant's specific circumstances, the Court finds that, even if Defendant exhausted his administrative remedies, a reduced term of imprisonment under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A) is not warranted. *See United States v. Garcia*, 2:16CR89, 2020 WL 2520923, at *1–2 (N.D. Ind. May 18, 2020) (finding that the 50-year-old defendant with a history of respiratory ailments, including bronchitis, asthma, and pneumonia, as well as sleep apnea and gastroesophageal reflux but who had not reported any present manifestations of the conditions had not shown extraordinary and compelling reasons for a sentence reduction); *United States v. Porter*, 17-cr-30057, 2020 WL 2509105, at *2–3 (C.D. Ill. May 15, 2020) (finding that the defendant had not shown extraordinary and compelling reasons for a sentence reduction under § 3582(c)(1)(A) when the defendant was 40 years old, had asthma that was in control with an inhaler, and had only served a third of his sentence with four years remaining and where the facility had no confirmed cases of COVID-19); *United States v. Davis*, 18-cr-10013, 2020 WL 2488574, at *4 (C.D. Ill. May 14, 2020) (finding that the defendant had not met his burden of establishing that extraordinary and compelling reasons justify his release when his asthma was managed by medication, the prison had five inmates test positive for COIVD-19, and the defendant had received an above-guidelines sentence because of the circumstances of the crime).

Finally, the Court recognizes that Defendant's motion also proposes release on home confinement. Def.'s Mot. 5, ECF No. 556. As noted above, the Court has limited jurisdiction to correct or modify a sentence absent the specific circumstances enumerated by Congress in 18 U.S.C. § 3582. Section 3582(c) contemplates only a reduction in sentence. *See* 18 U.S.C.

§ 3582(c). However, a request to serve the remainder of a term of imprisonment on home confinement is not a request to reduce the sentence but rather a request to change where Defendant serves that sentence. The execution of sentences and the computation of jail time is an administrative function under the authority of the Office of the Attorney General, which has delegated this task to the Bureau of Prisons. *United States v. Wilson*, 503 U.S. 329, 334–35 (1992). The Bureau of Prisons alone has the statutory authority to designate a defendant's place of imprisonment, including placement in home confinement. *See* 18 U.S.C. §§ 3621(b), 3624(c)(2). Accordingly, the Court denies this alternate requested relief. As noted above, Defendant requested and was denied placement in home confinement by the Bureau of prisons.

## CONCLUSION

Based on the foregoing, the Court DENIES the Petition Seeking Expedited Relief Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [ECF No. 556].

SO ORDERED on June 11, 2020.

                                          s/ Theresa L. Springmann
                                          JUDGE THERESA L. SPRINGMANN
                                          UNITED STATES DISTRICT COURT